IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

CLAYTON THOMAS,                    :          CIVIL ACTION
                    Petitioner     :
                                   :
          VS.                      :
                                   :
BEN VARNER,                        :
          AND                      :
THE DISTRICT ATTORNEY OF           :
THE COUNTY OF PHILADELPHIA,        :
          AND                      :
THE ATTORNEY GENERAL OF            :
THE STATE OF PENNSYLVANIA,         :
          Respondents              :          NO. 02-4778


MEMORANDUM AND ORDER

     CHARLES B. SMITH
UNITED STATES MAGISTRATE JUDGE

          Currently pending before the Court is a Petition for Writ
of Habeas Corpus filed, pursuant to 28 U.S.C. § 2254, by a
petitioner incarcerated in the State Correctional Institution at
Smithfield, Pennsylvania.  For the reasons which follow, we grant
an evidentiary hearing on petitioner's claim of ineffective
assistance of counsel for failure to move to suppress a witness
identification.

I.   PROCEDURAL HISTORY

          Following a jury trial presided over by the Honorable
Jane Cutler Greenspan of the Philadelphia Court of Common Pleas,
petitioner was convicted, on May 31, 1994, of second degree murder,
robbery, aggravated assault and possession of an instrument of
crime.  According to the Pennsylvania Superior Court,

> The charges stemmed from the robbery of a speakeasy located in the City of Philadelphia. Accompanied by a person who acted as lookout, [petitioner] entered the speakeasy brandishing a firearm and ordered the occupants to the floor. The proprietor of the establishment, Harry James, had been playing chess with a customer, Peter Fuller. Mr. James was fetching a beer for another customer when [petitioner] arrived. Instead of complying with [petitioner's] order, Mr. James leaped at [petitioner] and began to struggle with him. During the course of this altercation, [petitioner] shot Mr. James in the chest. The victim subsequently died of his wound. [Petitioner] also shot Mr. Fuller in the shoulder. Mr. Fuller survived.

Superior Court Opinion (2000), pp. 1-2. After the convictions,[1] Judge Greenspan sentenced petitioner to a term of life imprisonment. Although trial counsel failed to file a timely notice of appeal, petitioner's direct appeal rights were reinstated on October 28, 1996, at which time petitioner appealed to the Pennsylvania Superior Court. By way of memorandum opinion, issued May 5, 1998, the Superior Court affirmed the judgment of sentence. Petitioner did not seek allowance of appeal from the Pennsylvania Supreme Court.

On April 6, 1999, petitioner filed a pro se petition pursuant to Pennsylvania's Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. § 9541, et seq. Thereafter, petitioner retained counsel, who filed both an amended and a supplemental petition. Without conducting an evidentiary hearing, the PCRA court summarily denied the petitions on June 27, 2000. The Pennsylvania Superior Court

---

[1] Notably, petitioner's co-defendant and son, Shaurn Thomas, was acquitted of all charges.

affirmed on December 12, 2001, adopting, in part, some of the reasoning of the PCRA court. On July 9, 2002, the Pennsylvania Supreme Court denied petitioner's request for allowance of appeal.

Petitioner filed the instant Petition for Writ of Habeas Corpus on July 18, 2002, raising the following issues for review:

1. Ineffective assistance of trial counsel for failure to object to the introduction of his co-defendant's statements which constituted a violation of his Sixth Amendment right to confrontation as set forth in Bruton v. United States, 291 U.S. 123 (1968), or to otherwise request a cautionary instruction;

2. Ineffective assistance of trial counsel for failure to move to suppress a witness identification that was both impermissibly suggestive and constitutionally unreliable;

3. Prosecutorial misconduct for improperly attempting to bolster the credibility of central witnesses Christopher Young and Detective Piree in violation of petitioner's Fifth and Fourteenth Amendment rights to due process.[2]

Having considered the opposing arguments, the Court now turns to a discussion of the issues before us.

II.  STANDARD OF REVIEW

Under the current version of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), an application for writ of habeas corpus from a state court judgment bears a significant burden. Section 104 of the AEDPA imparts a presumption

---

[2] In his actual habeas petition, petitioner raises a fourth claim of ineffective assistance of counsel for failing to impeach the primary adverse witness with his criminal record. Without providing any other argument, he thereafter refers to his "Memorandum of Law, to be filed." In that Memorandum of Law, he does not address this issue at all. Absent any further discussion by petitioner, we shall likewise not address this issue.

of correctness to the state court's determination of factual issues
— a presumption that petitioner can only rebut by clear and
convincing evidence.  28 U.S.C. § 2254(e)(1) (1994).  The statute
also grants significant deference to legal conclusions announced by
the state court, as follows:

> An application for a writ of habeas corpus on behalf of
> a State court shall not be granted with respect to any
> claim that was adjudicated on the merits in State court
> proceedings unless that adjudication of the claim -
>
> > (1) resulted in a decision that was contrary to, or
> > involved an unreasonable application of, clearly
> > established federal law, as determined by the
> > Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an
> > unreasonable determination of the facts in light of
> > the evidence presented in the State court
> > proceeding.

28 U.S.C. § 2254(d).

The United States Supreme Court, in the case of <u>Williams
v. Taylor</u>, 529 U.S. 362, 120 S. Ct. 1495 (2000), interpreted the
standards established by the AEDPA regarding the deference to be
accorded to state court legal decisions, and more clearly defined
the two-part analysis set forth in the statute.  <u>Williams</u>, 529 U.S.
at 404-405.  Under the first part of the review, the federal habeas
court must determine whether the state court decision was "contrary
to" the "clearly established federal law, determined by the Supreme
Court of the United States."  As defined by Justice O'Connor,
writing for the majority of the Court on this issue, a state court
decision can be contrary to Supreme Court precedent in two ways:

1) "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law," or 2) "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to that reached by [the Supreme Court]." Id. The Court explained, however, that this "contrary to" clause does not encompass the "run-of-the-mill state-court decisions" applying the correct legal rule from Supreme Court cases to the facts of the prisoner's case." Id. at 406.

To reach such "run-of-the-mill" cases, the Court turned to an interpretation of the "unreasonable application" clause of § 2254(d)(1). It found that a state court decision can involve an unreasonable application of Supreme Court precedent: 1) "if the state court identifies the correct governing legal rule from the Court's cases but unreasonably applies it to the facts of the particular state prisoner's case," or 2) "if the state court either unreasonably extends a legal principle from our precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context should apply." Williams, 529 U.S. at 407-408. The Court specified, however, that under this clause, "a federal habeas court may not issue the writ simply because the court concludes in its independent judgment that the relevant state-court decision applied clearly-established federal law erroneously or incorrectly. Rather, that application must also be

5

unreasonable." Id. at 410.

III. DISCUSSION OF THE MERITS

In his attempt to obtain habeas relief, petitioner sets forth three separate ineffective assistance of counsel claims. We first address the standard governing these claims and then discuss them on their merits.

A. Standard for Ineffective Assistance of Counsel Claims

The Sixth Amendment to the United States Constitution recognizes the right of every criminal defendant to effective assistance of counsel. U.S. Const., amend. VI. In the case of Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, reh'g denied, 467 U.S. 1267, 104 S. Ct. 3562 (1984), the Supreme Court set forth a two-prong test — both parts of which must be satisfied — by which claims alleging counsel's ineffectiveness are adjudged. First, the petitioner must demonstrate that his trial counsel's performance fell below an "objective standard of reasonableness." Id. at 688. The Supreme Court has explained that:

> A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstance of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

Id. at 689 (quoting Michel v. Louisiana, 350 U.S. 91, 107, 76 S.

6

Ct. 158, 163-164 (1955)).  A convicted defendant asserting
ineffective assistance must, therefore, identify the acts or
omissions that are alleged not to have been the result of reasoned
professional judgment.  Id. at 690.  The reviewing court must then
determine whether, in light of all circumstances, the identified
acts or omissions were outside "the wide range of professionally
competent assistance."  Id.  It is well-established that appellate
counsel cannot be ineffective for failing to raise a meritless
claim.  See Strickland, 466 U.S. at 691; Holland v. Horn, 150 F.
Supp.2d 706, 730 (E.D. Pa. 2001).

         Pursuant to the second prong, the defendant must
establish that the deficient performance prejudiced the defense.
It requires a demonstration that counsel's errors were so serious
as to deprive the defendant of a fair trial or a trial whose result
is reliable.  Strickland, 466 U.S. at 687.  More specifically, the
defendant "must show that there is a reasonable possibility that,
but for counsel's unprofessional errors, the result of the
proceeding would have been different.  A reasonable probability is
a probability sufficient to undermine confidence in the outcome."
Id. at 694.

    B.   Failure to Object to an Alleged Violation of Sixth
         Amendment Right to Confrontation

         In his first substantive claim, petitioner challenges
defense counsel's failure to object to the admission of out-of-
court statements made by his co-defendant, Shaurn Thomas, despite

7

the fact that Shaurn never testified. By way of background, petitioner contends that eyewitness Christopher Young had given two statements to police. In his first statement, Young said he could not identify the perpetrators of the crime. In his second statement, however, he inculpated both petitioner and his co-defendant. Relying on this latter statement, the Commonwealth called Young to testify at trial against both defendants. When Young refused to implicate petitioner in his direct trial testimony, the Commonwealth called Detective Jeffrey Piree to read into evidence Young's earlier statement to police. In the first part of that statement, Young asserted:

> I was starting to leave out and [petitioner] said Mr. Harry got a speak down where you live. He said we can get paid off of that. I said, no, I am not into stickups. Then Shaurn [co-defendant] said to his father, no dad, people know me down there by Mr. Harry's speakeasy.

(N.T. 5/25/94, pp. 176-178). Subsequently, in that statement, when responding to Detective Piree's inquiry as to whether petitioner and Shaurn Thomas ever gave anything to Mr. Young, Young stated:

> No. They never even said how much they got and I never asked, but a couple of days later, I seen or talked to Shaurn when he called me at Peachy's house and he told me it was stupid for him and his dad to rob Harry and wrong for his dad to have shot Harry and Pete.

(N.T. 5/25/95, pp. 185). Petitioner now claims that the admission of these statements, without redaction of the references to him as Shaurn's father, violated his Sixth Amendment right to confrontation.

8

The Superior Court addressed this claim on review from the trial court's denial of PCRA relief. It found that trial counsel was not ineffective for failing to object to the unredacted statements since he actually used the challenged remarks to bolster the defense theory that Young fabricated evidence to curry favor with the police. It remarked specifically that Young testified that he only told police what they wanted to hear because Detective Piree said he would "go down" for the murder unless he gave up petitioner. See Superior Court Opinion (2001), at pp. 12-13. During closing, counsel for petitioner's co-defendant emphasized this testimony, contended that the entirety of the second statement given to police was coerced, including the hearsay statements allegedly uttered by Shaurn Thomas, and asserted that Young's first statement to police was more trustworthy than this later account. Counsel further highlighted for the jury Young's fear of the police and his motivation to lie to appease them with any details they might find helpful. Id. at 14. Relying on these various factual findings, the Superior Court held that petitioner's counsel was acting out of reasonable trial strategy by not objecting to the hearsay statements. It remarked that simply because the strategy was unsuccessful, it could not be deemed so unreasonable that no competent lawyer would have chosen it.

Considering this state court ruling, this Court remains somewhat troubled. We note, at the outset, that while we are

9

required to give deference to the state courts' factual conclusions, see 28 U.S.C. § 2254, and while the question of whether or not counsel made an informed tactical decision is a question of fact, Thames v. Dugger, 848 F.2d 149, 151 (11th Cir. 1988), the state's findings were made absent any type of evidentiary hearing and only upon speculation regarding trial counsel's actual strategy. As petitioner aptly points out, the state courts, without an inquiry into counsel's state of mind, could not discern whether counsel actually did have a reasonable strategy in mind or simply failed to appreciate the propriety of an objection on this issue. Indeed, petitioner correctly notes that trial counsel could have easily allowed the admission of the first portion of Young's statement, which evidenced police overreaching, while likewise moving to exclude Shaurn Thomas's embedded hearsay comment regarding petitioner's guilt. Alternatively, if counsel had truly strategized in accordance with the state courts' speculation, he could have sought a cautionary instruction to limit the jury from considering Shaurn's out-of-court confessions as substantive evidence of guilt. In light of these factors, we cannot find that the state court's decision was a reasonable application of the Strickland standard for effective assistance of counsel.

Nonetheless, we still find that petitioner's claim does not merit habeas relief, albeit on a different ground.

Specifically, we hold that while counsel, even in pursuit of the strategy proposed by the state courts, could have objected to the admission of Shaurn Thomas's out-of-court statements, such an objection would have been rejected as meritless. Because counsel cannot be ineffective for failing to make such a fruitless objection, petitioner cannot succeed on his <u>Strickland</u> claim. <u>Holloway v. Horn</u>, 161 F. Supp.2d 452, 555 (E.D. Pa. 2001).

  The Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. CONST., AMEND VI. "The central concern of the Confrontation Clause is to ensure the reliability of the evidence against a criminal defendant by subjecting it to rigorous testing in the context of an adversary proceeding before the trier of fact." <u>Maryland v. Craig</u>, 497 U.S. 836, 845, 110 S. Ct. 3157, 3163 (1990). Hence, when defendants are tried jointly, a "confession of one cannot be admitted against the other unless the confessing witness takes the stand." <u>Richardson v. Marsh</u>, 481 U.S. 200, 206, 107 S. Ct. 1702, 1707 (1987).

  In <u>Bruton v. United States</u>, 391 U.S. 123, 88 S. Ct. 1620 (1968), the Court held that a defendant's constitutional right to confrontation is denied when the confession of a co-defendant, which implicates the defendant, is admitted at trial but the co-defendant is not subjected to cross-examination. <u>Id</u>. at 127-128.

11

In Bruton, the co-defendant's confession directly implicated the defendant. Id. at 124. The court found that the use of that statement at trial, when the maker did not testify, violated the Sixth Amendment even though the trial court later instructed the jury that the co-defendant's confession could only be used against the co-defendant himself and not against the defendant. Id. at 137. The Court reasoned that in a joint trial, where the defendant and the confessing co-defendant stand side-by-side, "the risk that the jury will not, or cannot, follow [the trial court's limiting] instructions is so great, and the consequences so vital to the defendant, that the practical and human limitations of the jury system cannot be ignored." Bruton, 391 U.S. at 135. Hence, the Bruton Court found limiting instructions to be an inadequate substitute for a defendant's constitutional right of cross-examination. Id. at 137.

Although Bruton dealt solely with a co-defendant's confession, more recent cases citing the Supreme Court's opinion have expanded the rule to include any hearsay statements which implicate the defendant. See Monachelli v. Warden, 884 F.2d 749, 753 (3d Cir. 1989). These cases, however, do not suggest that hearsay statements of a co-defendant, which are properly admitted under an exception to the hearsay rule, necessarily violate the Sixth Amendment, even if they inculpate the defendant. See Bruton, 391 U.S. at 128, n. 3 ("There is not before us . . . any recognized

12

exception to the hearsay rule . . . and we intimate no view whatever that such exceptions necessarily raise questions under the Confrontation Clause"). Indeed, it is well-established that Bruton does not prohibit the admission of inculpatory statements of co-defendants which bear sufficient "indicia of reliability" in that they are admissible under a "firmly rooted" hearsay exception or otherwise have "particularized guarantees of trustworthiness." Ohio v. Roberts, 448 U.S. 56, 65-66, 100 S. Ct. 2531, 2539 (1980); Lilly v. Virginia, 527 U.S. 116, 125, 119 S. Ct. 1887, 1894-1895 (1999); Dutton v. Evans, 400 U.S. 74, 80, 91 S. Ct. 210, 215 (1999); United States v. Steinmetz, 643 F. Supp. 537, 541 (M.D. Pa. 1986).

        The question in the case before us then becomes whether co-defendant Shaurn Thomas's hearsay statement to Christopher Young fell within a firmly rooted hearsay exception or had particularized guarantees of trustworthiness. The Supreme Court described a hearsay exception as "'firmly rooted' if, in light of 'longstanding judicial and legislative experience,' . . ., it 'rest[s][on] such [a] solid foundatio[n] that admission of virtually any evidence within [it] comports with the 'substance of the constitutional protection.'" Lilly, 527 U.S. at 126 (internal quotations omitted). The Supreme Court has consistently found that the mere fact that one accomplice's confession qualified as a statement against his penal interest did not necessarily justify its use as

evidence against another person.  See Gray v. Maryland, 523 U.S. 185, 194, 118 S. Ct. 1151, 1156 (stating that because the use of an accomplice's confession "creates a special, and vital, need for cross-examination," a prosecutor desiring to offer such evidence must comply with Bruton, hold separate trials, use separate juries, or abandon the use of the confession).  Underlying this position is the theory that "when one person accuses another of a crime under circumstances in which the declarant stands to gain by inculpating another, the accusation is presumptively suspect and must be subjected to the scrutiny of cross-examination." Lee v. Illinois, 476 U.S. 530, 541, 106 S. Ct. 2056, 2062 (1986).  As such, the Supreme Court, beginning in the case of Lilly v. Virginia, supra, has repeatedly viewed an accomplice's statements that shift or spread the blame to a criminal defendant as falling outside the realm of those "hearsay exception[s] [that are] so trustworthy that adversarial testing can be expected to add little to [the statements'] reliability." Lilly, 527 U.S. at 132.  The admission of such statements at a joint trial where the declarant is unavailable to testify, then, is presumptively a violation of the Sixth Amendment Confrontation Clause.  Id. at 137.[3]

_____

[3]    For example, in Lilly, the Supreme Court disallowed the out-of-court statement of the defendant's brother who, under police questioning, conceded that he was involved in a shooting but identified the defendant as the triggerman.  Lilly, 527 U.S. at 139.  The Court's main concern was with statements in which, as often found in police-station confessions, the declarant admits what can easily be proven against him, but then shifts principal blame to another against whom the prosecutor offers the statement at trial.  Id. at U.S. 138-139.

This general position, however, does not suggest that all accomplice hearsay statements which implicate a defendant in a crime are a per se violative of the Sixth Amendment Confrontation Clause. Rather, the presumption of unreliability is precisely that -- a presumption, which may be rebutted by a showing that the statement is supported by "particularized guarantees of trustworthiness." Lee, 476 U.S. at 543. "[T]he very fact that a statement is genuinely self-inculpatory . . . is itself one of the 'particularized guarantees of trustworthiness' that makes a statement admissible under the Confrontation Clause." Williamson v. United States, 512 U.S. 594, 605, 114 S. Ct. 2431, 2437 (1994).

In Dutton v. Evans, 400 U.S. 74, 91 S. Ct. 210 (1970), the Supreme Court ruled that a statement by a prosecution witness, who testified that defendant's co-conspirator had, while in prison where both were incarcerated, stated that had it not been for defendant "we wouldn't be in this now," was admissible against defendant as substantive evidence of his guilt, even though the co-conspirator was unavailable to testify. Id., 91 U.S. at 88-89. It recognized that, "[f]rom the viewpoint of the Confrontation Clause, a witness under oath, subject to cross-examination, and whose demeanor can be observed by the trier of fact, is a reliable informant not only to what he has seen but also as to what he has heard." Id. at 88. Where there are adequate "indicia of reliability" a statement may thus be placed before a jury though

there is no confrontation of the declarant.  <u>Id</u>. at 89.  In that case, the statement in question  contained no express assertion about past fact, the declarant had clearly-established personal knowledge as to the identity and role of the other participants in the triple murder, the possibility that the declarant's statement was founded on faulty recollection was remote, the declarant had no apparent reason to lie to the witness, the statement was spontaneous and it was against the declarant's penal interest.  <u>Id</u>. at 88-89.

Other courts have followed <u>Dutton</u>'s lead and have distinguished <u>Lilly</u> where certain indicia of reliability surrounded the hearsay statement sought to be introduced.  For example, in <u>United States v. Shea</u>, 211 F.3d 658 (1st Cir. 2000), <u>cert. denied</u>, 531 U.S. 1154, 121 S. Ct. 1101 (2001), the First Circuit recognized that <u>Lilly</u>'s "main concern was with statements in which, as is common in police-station confessions, the declarant admits only what the authorities are capable of proving against him and seeks to shift the principal blame to another (against whom the prosecutor then offers the statement at trial)." <u>Id</u>. at 669.  In <u>Shea</u>, however, the statements implicating defendants in the crime, were against the declarants' penal interest, were all made to friends or companions, not to the police and were not of the "blame shifting" variety.  <u>Id</u>.

Likewise, in <u>United States v. Photogrammetric Services,</u>

<u>Inc.</u>, 259 F.3d 229 (4th Cir. 2001), <u>cert. denied</u>, 535 U.S. 926, 122 S. Ct. 1295 (2002), the defendant corporation was not entitled, under the Confrontation Clause, to suppress incriminating statements made by its co-defendant employee, who did not testify at trial.   <u>Id</u>. at 245-246.   The court found that the statements were self-inculpatory, implicating the employee in the criminal conduct, and therefore had particularized guarantees of trustworthiness.   <u>Id</u>.   Moreover, although the statements were made to law enforcement agents and the agents' informant, they made no attempt to shift or spread blame to another, which would call the reliability of the statements about his co-defendant into question. <u>Id</u>.

Although the United States Supreme Court has yet to explicitly enumerate factors to be considered in determining whether there are particularized guarantees of trustworthiness, the Pennsylvania Supreme Court has noted that a multitude of items may be considered, including:   the circumstances under which the statements were uttered, including the custodial/noncustodial aspect of the setting; the identity of the listener; the contents of the statement, including whether the statements minimize the declarant's responsibility or other possible motivations of the declarant such as to lie, curry favor or distort the truth; the nature and degree of the "against interest" aspect of the statement, including the extent to which the declarant understands

17

that making the statement subjects him to criminal liability; the circumstances or events that prompted the statements, including whether they were made with the encouragement of the listener; the timing of the statement in relation to the events described; the declarant's relationship to the defendant; and any other factors bearing upon the statement's reliability. Commonwealth v. Robins, 812 A.2d 514, 525-526 (Pa. 2002). Notably, the use of hindsight or "bootstrapping" based on independent evidence is proscribed. Id.

Turning to the case at bar, the statement of Shaurn Thomas falls into the category of hearsay statements surrounded by particularized guarantees of trustworthiness. We note, at the outset, that the introduction of his statement constituted double hearsay. The Commonwealth introduced the prior statement of witness Christopher Young, after Young refused to implicate petitioner on the stand. Young's statement came in under Commonwealth v. Lively, 610 A.2d 7 (Pa. 1992), as a prior inconsistent statement, which had been reduced to writing, signed and adopted by him. That statement, however, contained a second hearsay level consisting of Shaurn Thomas's statements to Young regarding the circumstances of the crime. Shaurn's statements were indeed against his penal interest, as he specifically implicated himself in the robbery and subjected himself to felony-murder charges, by identifying his father as the shooter of the victims. While some blame-shifting occurred by Shaurn's pinning the actual

18

shooting on his father, the statement falls well outside the type
of statements with which <u>Lilly</u> was concerned. Specifically, the
record reveals that Shaurn approached Young and that Young was an
acquaintance of both Shaurn and his father who had been originally
solicited to participate in the crime. Shaurn, thus, had no
apparent reason to lie to Young and could not have made the
statements to curry any favor with authorities. Although it is
possible that Shaurn did not understand that his statements would
subject him to criminal liability, it is important to note that he
made the statements spontaneously, at his own behest and without
encouragement from anyone. Moreover, there is no dispute that
Shaurn had personal knowledge about the crime and that the
statement was made shortly after the robbery and shooting,
minimizing the likelihood that it was based on faulty recollection.
Further, the statement contained no express assertion of past fact,
rather merely an indication of regret for the actions of he and his
father. Finally, the father-son relationship between petitioner
and Shaurn decreases the possibility that Shaurn's statement was a
false account in an effort to frame petitioner.

        In light of the foregoing, we find that the underlying
<u>Bruton</u> issue does not have merit. Clearly, the statement bore the
requisite indicia of reliability contemplated by <u>Ohio v. Roberts</u>,
<u>supra</u> and reiterated in <u>Dutton</u> and its progeny. Consequently, any
effort by counsel to exclude Shaurn Thomas's out-of court statement

would have likely been met with a denial.  As counsel cannot be ineffective for failing to pursue a meritless objection, we decline to find that habeas relief is warranted on this issue.[4]

   C.   Ineffective Assistance of Counsel for Failure to Seek
        Exclusion of an Impermissible Suggestive Witness
        Identification

        Petitioner's next claim contends that counsel improperly failed to pursue a motion to suppress and/or strike two identifications made by Commonwealth witness Peter Fuller – one made during a photo array and one made during trial.  Mr. Fuller testified that while viewing photographic arrays after the incident, he was unable to identify anyone until the detective took out the photograph of petitioner and co-defendant and "suggested" that they were the ones involved.  He stated that if the detective had not picked out the defendants' photographs, he "wouldn't have identified them."  (N.T. 5/25/94, pp. 139-140, 146).  Moreover, although he fingered petitioner at trial, Mr. Fuller could not identify petitioner at the preliminary hearing.  Petitioner now asserts that, despite the alleged impermissibly suggestive nature of this identification evidence, trial counsel withdrew the motion to suppress these identifications to the detriment of the defense.

_____

    [4]     Notably, it does not appear that petitioner has satisfied the second Strickland prong either.  As discussed above, this second prong mandates a showing that the deficient performance prejudiced the defense.  Shaurn Thomas's statement implicated both he and his father in the robbery.  Nonetheless, Shaurn was acquitted of all charges.  Apparently, then, the jury did not attach a great deal of weight to his admission.

On review of this claim, the Superior Court found that Mr. Fuller did indeed testify that he was unable to identify the perpetrators of the robbery and murder until Detective Piree showed him photographs of petitioner and his co-defendant and strongly suggested that they were guilty of the crimes. Superior Court Opinion (1994), at p. 20. Further, it acknowledged Mr. Fuller's statement that he would never have identified either petitioner or his co-defendant had the detective not picked out their photographs, and that he was unable to identify petitioner at the pre-trial hearing. Id. at 20-21. Finally, the Superior Court recognized that Mr. Fuller's concession that prior to trial he remained unsure of who really committed the crimes and that Detective Piree kept showing him photographs with the expectation that he would implicate someone.

Notwithstanding these findings, the Superior Court held that, based on the course of cross-examination, trial counsel had an obvious trial strategy in not seeking the suppression of Mr. Fuller's identifications. Specifically, it noted that the witness's testimony concerning the circumstances surrounding his pre-trial identification of petitioner's photograph was relevant to the defense strategy of proving that the police were overreaching and framing petitioner for the incident so as to close the books on the matter. Letting the jury hear that Detective Piree coerced the witness into identifying photographs advanced that strategy.

21

This Court's inquiry into the issue does not allow us to conclude that the state court's opinion was neither contrary to nor an unreasonable application of federal law. The Due Process Clause prohibits the use of identification procedures which are "unnecessarily suggestive and conducive to irreparable mistaken identification." Stovall v. Denno, 388 U.S. 293, 302, 87 S. Ct. 1967, 1972 (1967). In Simmons v. United States, 390 U.S. 377 (1968), the United States Supreme Court recognized that the "improper employment of photographs by police may sometimes cause witnesses to err in identifying criminals." Id. at 383. If police single out particular photographs or indicate that they have evidence implicating one of the individuals in the photographs, the chance of misidentification is heightened, thereafter reducing the trustworthiness of a subsequent lineup or in-court identification. Id. at 383-384. In other words, the Court theorized that a witness, upon being subjected to a suggestive photo array, may retain the image of the suggested perpetrator in his or her mind, making any later identifications potentially inaccurate. Id.

Despite its acknowledgment of the hazards inherent in initial identification by photograph, however, the court declined to blanketly prohibit its employment as unconstitutional. Id. at 384. Rather, it held that "each case must be considered on its own facts, and that convictions based on eyewitness identification at trial following a pretrial identification by photograph will be set

aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." Id. at 384.

"[R]eliability is the linchpin in determining the admissibility of identification testimony . . . ." Manson v. Brathwaite, 432 U.S. 98, 114, 97 S. Ct. 2243, 2253 (1977). If, following a suppression hearing, a trial court finds that out-of-court identifications were impermissibly suggestive, it may also exclude the in-court identification, unless an independent basis for that in-court identification exists. DiAngelo v. U.S., 406 F. Supp. 880, 882 (D.C. Pa. 1976), aff'd, 566 F.2d 1168 (1977). In United States v. Higgins, 458 F.2d 461 (3d Cir. 1972), the Third Circuit Court of Appeals set out seven factors to be considered in determining whether an in-court identification is the product of an independent source:

> (1) the manner in which the pre-trial identification was conducted;
>
> (2) the witness' prior opportunity to observe the alleged criminal act;
>
> (3) the existence of any discrepancies between the defendant's actual description and any description given by the witness before the photographic identification;
>
> (4) any previous identification by the witness of some other person;
>
> (5) any previous identification of the defendant himself;
>
> (6) failure to identify the defendant on a prior

23

occasion; and

(7) the lapse of time between the alleged act and the out-of-court identification.

458 F.2d at 465. Although each individual factor is important, the "totality of surrounding circumstances" governs the ultimate determination. Id.

In the case at bar, respondent argues that petitioner's ineffective assistance of counsel claim for failure to move to suppress Fuller's in-court identification has no merit on three grounds. First, it claims that for the ineffectiveness claim to succeed, a motion to suppress the in-court identification must itself have had merit — a fact which remains in dispute due to the conflicting testimony of Mr. Fuller and Detective Piree regarding the circumstances of the out-of-court identification. Second, respondent contends that even if a motion to suppress Fuller's in-court identification could have succeeded, counsel purposely failed to raise such a motion on grounds of sound trial strategy. Finally, respondent asserts that, regardless of whether or not counsel was ineffective, petitioner has failed to prove the second element of Strickland, i.e. that of prejudice. We find that none of these argument detract from the potential meritorious nature of petitioner's claim.

In its first argument, respondent claims that although Mr. Fuller unequivocally testified as to a suggestive photo array, his testimony was contradicted by Commonwealth witness Detective Jeffrey

Piree. Detective Piree testified that Fuller had viewed photographs on three different occasions and did not identify anyone during either of the first two. During the third array, however, Mr. Fuller was shown 24 photographs, including those of petitioner and Shaurn Thomas. This array was the identical one given to Christopher Young a short time prior. According to Detective Piree, Young identified petitioner and Shaurn Thomas as perpetrators and stated, "I believe it is them." The detective denied Fuller's allegation that two photographs were singled out. (N.T. 5/25/94, 216-220). Based on this contradictory testimony, the respondent argues that any claim that a suggestive identification procedure occurred remains very much in dispute.

This argument, however, identifies the very core of the problem which we now face. Had counsel moved, prior to Fuller's testimony, to suppress his potential in-court identification of petitioner, the trial court would have likely held a suppression hearing to consider and resolve the credibility issues between Fuller and Piree. At that juncture, we would have a clear determination as to whether the photographic array was indeed so suggestive as to taint the validity of his in-court identification of petitioner. Counsel, however, never did so. Nor did the PCRA court take the opportunity to hear from each of these witnesses to satisfy itself regarding the constitutionality of the in-court identification. Indeed, neither the PCRA court nor the Superior

Court ever even considered the underlying merits of this claim or addressed the constitutionality of the photo array. Consequently, the fact that the suggestive nature of the out-of-court identification remains in dispute advocates in favor of an evidentiary hearing in this Court to make that determination. See Campbell v. Vaughn, 209 F.3d 280, 286-287 (3d Cir. 2000), cert. denied, 531 U.S. 1084, 121 S. Ct. 789 (2001) (where the state courts failed to resolve the factual issue on which a habeas petition rests, a new evidentiary hearing would be permitted, as the failure to develop the factual record would not be petitioner's fault).

In a continuation of its first argument, respondent goes on to suggest that even assuming a suppression judge had accepted Mr. Fuller's testimony over that of Detective Piree, the judge might still find Fuller's in-court identification to be admissible. Fuller testified that he viewed petitioner from a distance of six feet as petitioner aimed a gun at him, spoke briefly to him and then shot him. Accordingly, the suppression judge may have concluded that the identification was the product of an independent source and, hence, admissible despite the suggestiveness of the photographic array.

We again, however, decline to make such a ruling absent some factual findings by a decisionmaker who has heard testimony on this issue. It is undeniable that Fuller failed to identify petitioner at the preliminary hearing and specifically stated that

he would have been unable to identify him at all had Detective Piree not picked out the two photographs from the array for him. As such, it was quite probable that the final in-court identification based only on Fuller's recollection from the impermissible out-of-court photo array. Certainly, these facts constitute the precise type of situation against which <u>Simmons</u> sought to guard.

In a second effort to undermine petitioner's claim, respondent argues that, notwithstanding the merits of the underlying <u>Simmons</u> claim, the overriding ineffective assistance of counsel claim does not have merit since counsel purposely, and acting under clear trial strategy, chose to exploit the circumstances behind Fuller's in-court identification so as to bolster the defense claim of police overreaching. Echoing much of the Superior Court's opinion, respondent contends that "[t]he record plainly establishes that trial counsel intentionally elicited Mr. Fuller's testimony concerning the photographic displays." Response to Petition for Writ of Habeas Corpus, at 36. It asserts that, to undermine the reliability of Mr. Fuller's in-court identification, defense counsel first elicited his failure to identify petitioner at the preliminary hearing and then attempted to discredit the trial identification by portraying it as the product of police over-zealousness. Based on the record, respondent asks us to conclude that trial counsel's actions were not the result of incompetence, but rather were well thought out to completely undermine one of the two eyewitnesses.

Absent some factual development of this issue, however, we cannot make such a conclusion. Without the benefit of an evidentiary hearing, the Superior Court found it to be "obvious from the record" that defense counsel purposely allowed admission of the in-court identification so that he could impeach Fuller with the circumstances surrounding his out-of-court identification. This determination was made, however, based on mere speculation.[5] "Strickland requires an analysis based on a complete record. The reviewing court's reasoning under the first prong needs to be made with an understanding of counsel's thought process . . . so that a conclusion whether counsel was ineffective can be made based on facts of record, rather than on assumptions." Marshall v. Hendricks, 307 F.3d 36, 115 (3d Cir. 2002). The Superior Court and respondent assumed that defense counsel performed based on sound trial strategy. As petitioner points out, though, the record also supports a contrary finding that counsel failed to appreciate that he could have had the in-court identification suppressed altogether while still arguing police overreaching. Only after the identification was admitted did counsel use cross-examination to mitigate the damage. In short, we recognize the very real

---

[5] The Pennsylvania Supreme Court has likewise commented on the impracticality of appellate courts being asked to speculate as to the trial strategy of trial counsel in order to rule upon ineffectiveness claims. The Court noted that meaningful appellate review of ineffective assistance of counsel claims is best effected when the trial court first undertakes to develop the record and engage in the appropriate fact-finding to discern trial counsel's strategy. Commonwealth v. Grant, 813 A.2d 726, 733, 736 (Pa. 2002).

possibility that counsel was, in fact, ineffective for failing to move to suppress and/or strike Mr. Fuller's in-court identification.

While we do not necessarily discredit the Superior Court's speculation as to defense counsel's supposed strategy, we likewise cannot presume it to be correct absent factual findings made after a full and fair evidentiary hearing on the record.  To do so would, as petitioner notes, allow a state court to dispose of any Strickland claim by just inventing a reasonable basis for any attorney's actions, be it real or not.  Where a habeas petitioner "has diligently sought to develop the factual basis of a claim for habeas relief, but has been denied the opportunity to do so by the state court, § 2554(e)(2) will not preclude an evidentiary hearing in federal court."  Campbell, 209 F.3d at 287 (quoting Cardwell v. Greene, 152 F.3d 331, 337 (4th Cir. 1998)).  As petitioner has never had the opportunity to develop the factual basis of this ineffectiveness claim, we find that an evidentiary hearing in this Court is indeed warranted.

In a final effort to diffuse petitioner's ineffectiveness allegation, respondent contends that even assuming *arguendo* that the out-of-court photo array was impermissibly suggestive and that counsel did not have a reasonable trial strategy for failing to move to suppress the in-court identification, petitioner cannot prove the second Strickland element of prejudice.  Again, we cannot agree without further factual inquiry.  The remainder of the

29

Commonwealth's case against petitioner consisted of the testimony of Christopher Young and the out-of-court statement by co-defendant Shaurn Thomas.  Young initially testified that he did not know who the robbers were, forcing the Commonwealth to introduce his prior inconsistent statement to police that petitioner and his son Shaurn were the perpetrators.  Moreover, Young had four felony cases pending during petitioner's trial, lending motivation to his inculpation of petitioner.  His credibility was, therefore, already at issue.  Shaurn Thomas's statement, while certainly inculpatory of both he and petitioner, was obviously not credited significantly by the jury since it declined to convict Shaurn of any charges.  Consequently, we find a reasonable possibility that, but for counsel's unprofessional errors in failing to move to suppress and/or strike Mr. Fuller's in-court identification, the result of the proceeding would have been different.  As such, we decline to dismiss the pending habeas petition without further factual inquiry on this issue.

    4.    Ineffective Assistance of Trial Counsel for Failure
          to Object to Prosecutorial Misconduct

    In his final claim, petitioner argues that trial counsel was ineffective for failing to raise and preserve three instances of prosecutorial misconduct, wherein the Commonwealth attempted to

bolster the credibility of certain witnesses.[6]  He first alleges that trial counsel did not object when after Young testified the prosecutor asked, "Do you want to be charged with perjury?"  In the remaining two instances, he accuses the prosecutor of improperly vouching for a witness when, during closing arguments, the

---

[6]  Petitioner also presents as a substantive claim the underlying issue of prosecutorial misconduct.  This claim, however, is procedurally defaulted.  Before a federal court may grant habeas relief to a state prisoner, the prisoner must exhaust his remedies in state court.  O'Sullivan v. Boerckel, 526 U.S. 838, 842, 119 S. Ct. 1728, 1731 (1999).  In other words, a petitioner must invoke "one complete round of the State's established review process."  Id. at 845.  In the case of an unexhausted petition, the federal courts should dismiss it without prejudice, otherwise, they risk depriving the state courts of the "opportunity to correct their own errors, if any."  Toulson v. Beyer, 987 F.2d 984, 989 (3d Cir. 1993).  However, "[i]f [a] petitioner failed to exhaust state remedies and the court to which petitioner would be required to present his claims in order to meet the exhaustion requirement would not find the claims procedurally barred . . . there is procedural default for the purpose of federal habeas . . ."  Coleman, 501 U.S. at 735 n.1; McCandless v. Vaughn, 172 F.3d 255, 260 (3d Cir. 1999).  The procedural default barrier, in the context of habeas corpus, precludes federal courts from reviewing a state petitioner's habeas claims if the state court decision is based on a violation of state procedural law that is independent of the federal question and adequate to support the judgment.  Coleman v. Thompson, 501 U.S. 722, 729, 111 S. Ct. 2546, 2553, reh'g denied, 501 U.S. 1277, 112 S. Ct. 27 (1991).
    Petitioner never raised the claims of prosecutorial misconduct, which he now presents for our review, on direct appeal or in his first PCRA petition.  Any current attempt by petitioner to file a second PCRA petition raising these claims, however, would unequivocally be deemed untimely.  Pursuant to the PCRA statute, "[a]ny petition under this subchapter . . . shall be filed within one year of the date the judgment becomes final . . .," unless petitioner proves that he was either prevented by government officials from raising the claims, the facts upon which the claims are based were previously unknown, or the right asserted is a newly-recognized constitutional right.  42 Pa.C.S.A. § 9545(b) (1998).  Petitioner's judgment became final on June 5, 1998 thirty days after the Superior Court denied his direct appeal.  See 42 Pa.C.S.A. § 9545(b)(3) (judgment becomes final at the conclusion of direct review, including discretionary review in the Supreme Court of the United States and the Supreme Court of Pennsylvania, or at the expiration of time for seeking the review.).  The Pennsylvania Supreme Court has conclusively established that the one-year statute of limitations acts as a jurisdictional bar and is not subject to equitable tolling.  Commonwealth v. Fahy, 737 A.2d 214, 222 (Pa. 1999).  Because petitioner cannot now return to the Pennsylvania courts, as the limitations period has lapsed, the unexhausted claims become procedurally defaulted for purposes of habeas review.

    During PCRA proceedings, however, the Superior Court addressed these claims under the guise of ineffective assistance of counsel for failure to raise the prosecutorial misconduct claim.  We, in turn, address them in the same fashion.

prosecutor stated that the Detective Piree had "solved the murder," and that Young told the truth when he gave his statement to the police. Upon review of the record, we find no basis for granting habeas relief.

Under the law as set forth by the United States Supreme Court, a petitioner seeking the writ of habeas corpus will not succeed merely because the prosecutors' actions "were undesirable or even universally condemned." Darden v. Wainwright, 477 U.S. 168, 181, 106 S. Ct. 2464, 2471, reh'g denied, 478 U.S. 1036, 107 S. Ct. 24 (1986) (quotations omitted). "[T]he touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor." Smith v. Phillips, 455 U.S. 209, 219, 102 S. Ct. 940, 947 (1982). Thus, to state a claim for habeas relief based upon comments at trial by the prosecutor, a petitioner must show that the prosecutor's comments were so egregious that they fatally infected the proceedings, rendered the entire trial fundamentally unfair, and made the conviction a denial of due process. See Donnelly v. DeChristoforo, 416 U.S. 637, 643, 94 S. Ct. 1868, 1871 (1974); Lesko v. Lehman, 925 F.2d 1527, 1546 (3d Cir.), cert. denied, 502 U.S. 898, 112 S. Ct. 273 (1991). Where an error occurs, the inquiry then becomes whether, in light of the record as a whole, the prosecutor's conduct "had substantial and injurious effect or influence in determining the jury's verdict." Brecht v. Abramson, 507 U.S. 619,

638, 113 S. Ct. 1710, 1722 (1993), reh'g denied, 508 U.S. 968, 113 S. Ct. 2951 (1993).

Petitioner's first allegation of prosecutorial misconduct involves a question posed to Commonwealth witness Young during direct examination. During his testimony, Mr. Young asserted, contrary to the second signed statement he had given to police, that he did not see co-defendant Shaurn Thomas at the scene of the crime. In an obvious attempt to have Young repeat the inculpatory statements he had previously given to police, the prosecutor asked, "Do you want to be charged with perjury?" (N.T. 5/24/94, p. 30). Immediately thereafter, co-defense counsel objected to the statement and the court sustained. The prosecutor withdrew his question and no further perjury comment was made. Id.

Upon review of the PCRA court's determination of this issue, the Superior Court stated that "[t]he prosecutor's question fell within the 'rhythm' of the language used by the witness and constituted a fair response to Mr. Young changing his story from the last statement he gave to police. Moreover, there was no need for trial counsel to object to this question since counsel for co-defendant did so..." Superior Court Opinion (2001), at p. 24. The Superior Court went on to state that because the prosecutor questioned Young extensively regarding his various statements and he was subject to cross-examination, re-direct and re-cross on all of these points, "[t]he jury was not left to speculate on the truth

of the witness's arguments; they were fully apprised of the facts they needed to make their own credibility determination." Superior Court Opinion (2001), at p. 24.

This ruling is neither contrary to nor an unreasonable application of federal law.  While perhaps identifying an improper remark by the prosecutor to which counsel could have objected, petitioner has failed to satisfy the prejudice prong of the Strickland standard on several fronts.  First, the prosecutor's comment constituted merely an effort to prompt the witness to reiterate his prior inculpatory statement or to indicate to the jury that the witness had previously made a different report as to what he saw at the crime scene.  While his method was perhaps improper, he was nonetheless able to obtain that precise objective by his extensive questioning of the witness on the previous statements. In turn, defense counsel was able to cross-examine the witness on the veracity of both his testimony and his prior report to police. Consequently, as noted by the Superior Court, the prosecutor's fleeting comment regarding perjury did not deprive the jury of its opportunity to determine the credibility of the witness on its own. Moreover, immediately after the prosecution asked the improper question, co-defense counsel lodged an objection, which the court sustained.  No further comment on the subject was made.  As such, any attempt by petitioner's counsel to make the identical objection, far from changing the outcome of the trial, would have been merely

34

repetitive.

The second two instances of alleged prosecutorial misconduct, to which trial counsel failed to object, involved what petitioner has termed improper bolstering of witnesses' credibility. Specifically, while discussing Detective Piree's testimony during closing argument, the prosecution commented as follows:

> Piree told, you know, he [Christopher Young] was not a suspect. Piree did good police work. He reasoned like this; son, we know you were there when it happened and we know you know who did it. We know they came in behind you. We know that you were friendly with the doers. People will think you had something to do with this.
>
> Piree said I did not ever consider him a suspect. When you use that leverage to pry from this kid the truth, it fits. Now, is that not good police work? <u>He solved the murder.</u> According to the evidence, the murderers are sitting right there in front of your face.

(N.T. 5/26/94, p. 82). In addition, while addressing Christopher Young's conflicting statements to police and on the witness stand, the prosecutor argued:

> That makes perfect sense, perfect sense to you, as you sit there and listen to the twenty-year-old kid off the corner. If I tell them I knew, I am involved, they will think for sure, as sure as you are sitting here, that I had something to do with it; that I see Harry James up and got the old man killed.
>
> So he said in his statement, he said everything but who did it. <u>He told the truth.</u> He just left out that it was Clayton Thomas and Shaurn Thomas.

(N.T. 5/26/94, p. 80). Petitioner now contends that these two comments constituted unconstitutional vouching for the credibility of the Commonwealth witnesses.

35

The Superior Court rejected this precise claim. With respect to the reference to Detective Piree "solv[ing] the murder," the court noted that, when viewed in context, "the prosecutor's remark constituted a fair and proper comment on the evidence adduced at trial concerning Mr. Young's allegations that he was coerced by Detective Piree to fabricate evidence for the police." Superior Court Opinion, at p. 25. Moreover, it found that the prosecutor would have been deficient had he not attempted to convince the jury that Detective Piree was a reliable witness who had followed sound investigative tactics. With respect to the reference to Young telling the truth, the court remarked that the prosecutor's comment was a reasonable response to defense attempts to characterize the second statement Mr. Young gave the police as unreliable and coerced. More specifically, the court found that "the prosecutor was not improperly offering his personal opinion on the veracity of this witness. Rather, he was discussing the contradictory versions of events proffered by the witness, and commenting on Mr. Young's motivation to tell the truth the second time he was interviewed by police." Superior Court Opinion, at p. 27.

Again, we find no basis upon which to disagree with the state court ruling. A prosecutor may not try to bolster his case by vouching for the credibility of a government witness." United States v. Dispoz-O-Plastics, Inc., 172 F.3d 275, 283 (3d Cir. 1999). "Vouching constitutes an assurance by the prosecuting attorney of

36

the credibility of a Government witness through personal knowledge or by other information outside of the testimony before the jury." United States v. Walker 155 F.3d 180, 184 (3d Cir. 1998). The Third Circuit has held that in order to find vouching, two criteria must be met: "(1) the prosecutor must assure the jury that the testimony of a Government witness is credible; and (2) this assurance is based on either the prosecutor's personal knowledge, or other information not contained in the record." Id. at 187. "Thus it is not enough for a defendant on appeal to assert that the prosecutor assured the jury that a witness' testimony was credible. The defendant must be able to identify as the basis for that comment an explicit or implicit reference to either the personal knowledge of the prosecuting attorney or information not contained in the record." Id. The Third Circuit distinguishes between expressions of personal opinion based on the evidence and those based on facts not in evidence. Dispoz-O-Plastics, 172 F.3d at 28; United States v. Beaty, 722 F.2d 1090, 1097 (3d Cir. 1983). "Where a prosecutor argues that a witness is being truthful based on the testimony given at trial, and does not assure the jury that the credibility of the witness based on his own personal knowledge, the prosecutor is engaging in proper argument and is not vouching." Walker, 155 F.3d at 187.

Considering the two challenged comments in context, we do not find that any vouching occurred. The prosecutor, in both

37

instances, was merely seeking to prove that each witness was truthful based on the evidence at trial. The comment regarding Detective Piree merely attempted to show that he had been using good police investigatory tactics. With respect to the comment regarding Young, the prosecutor was try to prove only that Young had motivation, as shown by other evidence, to tell the truth to the police. At no point did the prosecutor express his personal opinion as to the credibility of these witness. As the prosecution's closing statement was well within constitutional bounds, counsel had no basis upon which to challenge its propriety. We, therefore, deny petitioner's claim as meritless.

IV.  CONCLUSION

        Having thoroughly considered the opposing arguments, this Court finds that petitioner's first and third ineffectiveness offer no basis upon which to grant habeas relief. His second claim, however, raises some specter of doubt, thereby prompting us to grant an evidentiary hearing wherein we may resolve some underlying factual issues. We reserve recommending judgment on the remaining two claims until after the conclusion of the evidentiary hearing.

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

CLAYTON THOMAS,                    :          CIVIL ACTION
                    Petitioner     :
                                   :
          VS.                      :
                                   :
BEN VARNER,                        :
          AND                      :
THE DISTRICT ATTORNEY OF           :
THE COUNTY OF PHILADELPHIA,        :
          AND                      :
THE ATTORNEY GENERAL OF            :
THE STATE OF PENNSYLVANIA,         :
                    Respondents    :          NO. 02-4778


<u>ORDER</u>

_____AND NOW, this *10th* day of *June*, 2003, IT IS HEREBY ORDERED that
an evidentiary hearing is granted with respect to petitioner's claim
of ineffective assistance of counsel for failure to move to suppress
Fuller's in-court identification.  The parties shall appear on
Monday, July 14, 2003, at 10:00 a.m., in a Courtroom to be provided.

          It is so ORDERED.

                              BY THE COURT:


                              _____
                                   CHARLES B. SMITH
                              UNITED STATES MAGISTRATE JUDGE


39