IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **CLAYTON THOTHOMAS** : | |
| : | **CIVIL ACTION** |
| v. : | |
| : | **NO. 02-4778** |
| **BEN VARNER, et al.** : | |

**MEMORANDUM AND ORDER**

**Kauffman, J.**                                                                                       **May    , 2004**

Before the Court is the Petition of Clayton Thomas ("Petitioner") for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 ("Petition").[1]  On July 30, 2002, the Petition was submitted to Magistrate Judge Charles B. Smith for a Report and Recommendation ("R&R").  On September 26, 2003, following an evidentiary hearing, Magistrate Judge Smith recommended that the Court grant the Petition with respect to Count II, but deny it with respect to Counts I and III.[2]  See R&R at 33; Memorandum and Order of Magistrate Judge Smith, June 10, 2003 at 20, 38.  On October 22, 2003, Respondents filed Objections to the recommendation that the Petition be granted with respect to Count II ("Objections").[3]  No objection has been asserted by Petitioner

---

[1]   Originally assigned to Judge Waldman, this matter was reassigned on April 4, 2003.

[2]   In Count II, Petitioner alleges ineffective assistance of counsel for failure to object to the in-court identification of Petitioner by Commonwealth witness Peter Fuller, which Petitioner claims was the product of an unconstitutionally suggestive photo array.
      Magistrate Judge Smith treated Count IV of the Petition as withdrawn.  No objection was raised to this determination.

[3]   Respondents object that Magistrate Judge Smith:
   1. Ignored the presumption of correctness given to state court decisions and improperly refused to defer to the state court's finding that trial counsel followed a reasonable trial strategy;
   2. Did not defer properly to the state court's legal determinations;

1

to the recommendation that the Petition be denied with respect to Counts I and III.  Accordingly, the Court will adopt the R&R and deny the Petition with respect to those claims.

The Court has reviewed the R&R de novo with respect to Count II, and agrees with Magistrate Judge Smith that the Petition should be granted.  See 28 U.S.C. § 636(b).

### I.     Background

The Superior Court provided a concise summary of the underlying case:

> The charges stemmed from the robbery of a speakeasy located in the City of Philadelphia.  Accompanied by a person who acted as lookout, [Petitioner] entered the speakeasy brandishing a firearm and ordered the occupants to the floor.  The proprietor of the establishment, Harry James, had been playing chess with a customer, Peter Fuller.  Mr. James was fetching a beer for another customer when [Petitioner] arrived.  Instead of complying with [Petitioner's] order, Mr. James leaped at [Petitioner] and began to struggle with him.  During the course of this altercation, [Petitioner] shot Mr. James in the chest.  The victim subsequently died of his wound. [Petitioner] also shot Mr. Fuller in the shoulder.  Mr. Fuller survived.

Memorandum Opinion of the Superior Court of Pennsylvania on Appeal from the Denial of Relief Pursuant to the Post-Conviction Relief Act, No. 2134 EDA 2000, Dec. 12, 2001 ("Super. Ct. PCRA App."), pp. 1-2.

Following a jury trial in the Court of Common Pleas of Philadelphia County, Petitioner was convicted on May 31, 1994 of second degree murder, robbery, aggravated assault and possession of an instrument of crime.  He was sentenced to life imprisonment.[4]  Petitioner's direct and PCRA appeals were exhausted on July 9, 2002, when the Pennsylvania Supreme Court

---

3.  Misapplied the standards for ineffective assistance of counsel;
4.  Erroneously placed the burden of proof on Respondents; and
5.  Misapplied the "totality of circumstances" test.

[4]     Petitioner's co-defendant, his son Shaurn Thomas, was acquitted of all charges.

denied his request for allowance of appeal.

Petitioner alleges that the critical eyewitness identification by Peter Fuller was tainted by an unconstitutionally suggestive photo array and that his trial counsel was ineffective for failing to object to it. Fuller has testified that he was first shown approximately one hundred photos, but could not identify the shooter. Trial Transcript, May 25, 1994 ("T.T. 5/25/94") at 136-138. He was then shown more photos, but still could not identify the shooter. Id. at 138. Several weeks later, Fuller was shown approximately ten or twelve additional photos, but he still could not identify the shooter. Id. Finally, a detective took the photos of Petitioner and his co-defendant out of the group of twelve and told Fuller to look at them "real good." Transcript of Preliminary Hearing, 3/25/93 ("P.T.") at 24-5. As the Superior Court noted, Fuller testified that if the detective had not "strongly suggested that [Petitioner and his co-defendant] were guilty of the crimes," he "would never have identified either [Petitioner] or his co-defendant."[5] Super. Ct. PCRA App. at 20-21; see R&R at 21; P.T. at 44, T.T. 5/25/94 at 137-146.[6] Because Fuller testified to these events at the preliminary hearing, trial counsel was aware of this testimony prior to trial. P.T. at 28, 43-45.

---

[5] The Superior Court concluded that defense counsel failed to object to the identification testimony because of a reasonable trial strategy. That factual finding was not supported by the record. Indeed, in an evidentiary hearing before Magistrate Judge Smith, trial counsel testified that he failed to object to the identification testimony not because of any trial strategy, but only because he believed he could not object to the in-court identification once it had been made. See infra pp. 6-8.

[6] Respondents dispute that the detective selected the two photographs for Fuller or suggested that the co-defendants were guilty.

**II.     Legal Standards**

A.     <u>Legal Standard - Habeas Corpus</u>

"An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).  Because this is not an appellate review of the state court decision, this Court must defer to the findings of fact reached by the state court whenever they are supported by probative evidence.  <u>Wright v. West</u>, 505 U.S. 277, 302 (1992); <u>Marshall v. Lonberger</u>, 459 U.S. 422, 432 (1983); <u>Riley v. Taylor</u>, 277 F.3d 261, 285 (3d Cir. 2001).  "[A] state court's finding that counsel had a trial strategy is a finding of fact to which the habeas court must afford the presumption of correctness if that factual finding is supported by the record." <u>Berryman v. Morton</u>, 100 F.3d 1089, 1095 (3d Cir. 1996).

B.     <u>Ineffective Assistance of Counsel</u>

A petitioner claiming ineffective assistance of counsel must demonstrate (1) that counsel's performance was deficient, i.e. that it fell below an objective standard of reasonableness, and (2) that counsel's deficient performance prejudiced his client.  <u>Strickland v. Washington</u>, 466 U.S. 668, 689-92.  In examining the question of deficiency, "[j]udicial scrutiny of an attorney's performance must be highly deferential." <u>Id.</u> at 689.

A fair assessment of attorney performance requires that every effort be

> made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'

Id. (Emphasis added).

"[I]n considering claims of ineffective assistance of counsel, '[w]e address not what is prudent or appropriate, but only what is constitutionally compelled.'" Burger v. Kemp, 483 U.S. 776, 794 (1987), citing U.S. v. Cronic, 466 U.S. 648, 665 n.38 (1984). "To establish deficient performance, a petitioner must demonstrate that counsel's representation fell below an objective standard for reasonableness" in the context of "prevailing professional norms." Wiggins v. Smith, 123 S.Ct. 2527, 2535-36 (2003) (internal quotations omitted).

Furthermore, a conviction should not be overturned, even if counsel was deficient, unless "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694.

C.     Tainted Identification

The admissibility of a challenged identification is reviewed under a two-part test: (1) the court must decide whether the identification procedure was unnecessarily suggestive and, if so, (2) whether under the "totality of the circumstances" it is nonetheless reliable. Neil v. Biggers, 409 U.S. 188, 199-200 (1972). Respondents do not dispute that the photo array, if it was conducted as Fuller claims, was unconstitutionally suggestive. See Simmons v. U.S., 390 U.S.

377, 383 (1968). However, "[C]onvictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." Id. at 384.

Five factors are relevant to the reliability of the identification: (1) the opportunity of the witness to view the criminal at the time of the crime, (2) the witness's degree of attention, (3) the accuracy of the witness's prior description of the criminal, (4) the level of certainty demonstrated by the witness at the confrontation, and (5) the length of time between the crime and the confrontation. Neil, 409 U.S. at 198.

**III.    Analysis**

A.    The Failure to Object

Normally, a motion to suppress must be made before trial. Pa. R. Crim. P. 581(B). Defense counsel had originally filed a pre-trial motion to suppress Fuller's testimony. However, at the preliminary hearing, after Fuller took twenty-five seconds to look at Petitioner, he was unable to identify Petitioner as the shooter. Accordingly, there being no identification to suppress, defense counsel withdrew the motion to suppress on the morning of trial. Transcript of the Evidentiary Hearing before Magistrate Judge Smith, August 27, 2003 ("T.E. 8/27/03") at 12-13. During his trial testimony, however, Fuller identified Petitioner as the shooter for the first time. T.T. 5/25/94 at 129. Petitioner's counsel failed to object to this testimony or to move for a mistrial. Id. at 131-146.

Based on its review of the trial transcript, the Superior Court concluded that defense counsel failed to object to the Fuller identification testimony because he had a reasonable trial

strategy of waiting to attack the identification on cross-examination. Super. Ct. PCRA App. at 21. This Court is bound by the Superior Court's findings of fact only if they are based on the record. Wiggins, 123 S.Ct., at 2539; Marshall v. Hendricks, 307 F.3d 36, 115 (3d Cir. 2002) ("The reviewing court's reasoning under the first prong needs to be made with an understanding of counsel's thought process. . . so that a conclusion. . . can be made based on facts of record, rather than on assumptions"). This Court need not defer to the Superior Court's conclusion if it was merely speculating as to the existence of a trial strategy. Marshall, 307 F.3d at 115; Berryman, 100 F.3d at 1095. The Third Circuit has recommended an evidentiary hearing as a way of avoiding "post-hoc rationalization of counsel's conduct." Marshall, 307 F.3d at 111, 114-15; Wiggins 123 S.Ct. at 2539.

"The Superior Court's ruling in this matter was based on nothing more than speculation as to counsel's intentions. Under the clear mandate of Strickland, such speculation cannot be given unquestioned deference by this Court." R&R at 10. Following the Third Circuit's recommendation in Marshall, Magistrate Judge Smith held an evidentiary hearing at which trial counsel testified that he failed to object to the in-court identification not because of trial strategy, but rather because he believed that he could not do so once it had been made.[7] T.E. 8/27/03 at 15. Accordingly, the Court will not defer to the Superior Court's incorrect conclusion. Counsel was deficient for failing to request a mistrial or to move to suppress Fuller's in-court

---

[7] This belief was erroneous. The Pennsylvania Rules of Criminal Procedure clearly provide for an objection or a motion to strike to be made after the admission of a statement where "the opportunity did not previously exist" or "the interests of justice otherwise require." Pa. R. Crim. P. 581(B). Significantly, Fuller had never identified Petitioner as the shooter before trial. Indeed, he repeatedly maintained that he could not do so. Thus, no opportunity previously existed to press an objection to Fuller's identification testimony.

identification.

B.     The Photo Array

Respondents argue that even if the Court accepts Fuller's version of events, the in-court identification was reliable under the totality of the circumstances. Magistrate Judge Smith disagreed, as does this Court. Because the Superior Court found that the failure to object was the result of a trial strategy, it did not reach the question of whether the identification was reliable. Super. Ct. PCRA App. at 20-22. Accordingly, this Court reviews the questions of suggestiveness and reliability de novo. Appel v. Horn, 250 F.3d 203, 210 (3d Cir. 2001).

With respect to the first and second Neil factors - (1) the opportunity of the witness to view the assailant and (2) his degree of attention (see supra, p. 6) - the Court agrees with Magistrate Judge Smith that Fuller's attention was not on the assailant, but rather was initially focused on his chess game and later focused on flight. R&R at 26-7; T.T. 3/25/94 at 119-122. Accordingly, these factors weigh in favor of suppression. Respondents submit that Fuller's prior description of the assailant and certainty at the time of trial (the third and fourth Neil factors) weigh in their favor. However, the reliability of Fuller's description is undercut by the fact that he repeatedly failed to identify Petitioner in photo arrays before trial and could not identify him at the pre-trial hearing.[8] The fifth Neil factor, the time between identification and the incident, weighs in favor of suppression because, at the times most proximate to the incident, Fuller was unable to identify Petitioner.[9] Finally, Fuller was shot during the altercation, which could have

---

[8]     Fuller's first confrontation with Petitioner after viewing the photo arrays was at the preliminary hearing, where he could not identify Petitioner.

[9]     The cumulative effect of seeing Petitioner in suggestive settings such as the allegedly unconstitutional photo array and the preliminary hearing may have contributed to

impacted both upon the quality of his perceptions and upon his desire to see someone convicted of the crime. Thus, the Court finds that, if Fuller's version of events is true, upon consideration of the totality of the circumstances, the photo array was so suggestive as to give rise to a substantial likelihood of irreparable misidentification and, accordingly, that the in-court identification should have been objected to and suppressed.[10]

Respondents next argue that this Court cannot find that the photo array actually was suggestive. Objections at 40; see R&R at 22, citing T.T. 5/25/94 at 216-220, 223. At trial, the detective who performed the photo array denied picking out Petitioner's photo or suggesting to Fuller that Petitioner was guilty. R&R at 22, citing T.T. 5/25/94 at 216-220, 223. The Court cannot, and does not, make a factual finding regarding the circumstances of the photo array. However, had Petitioner's counsel objected at trial, the Commonwealth would have borne the burden of "establishing that the challenged evidence was not obtained in violation of the defendant's rights." Pa. R. Crim. P. 581(H); Commonwealth ex rel. Butler v. Rundle, 239 A.2d 426 (Pa. 1968) (both the burden of production and of persuasion are on the Commonwealth). Given Fuller's sworn testimony at the preliminary hearing, an objection would have had evidentiary support.[11] Accordingly, Petitioner has met his burden of showing that his trial

---

Fuller's identification testimony at trial. Furthermore, Fuller met with the prosecutor to prepare for his trial testimony subsequent to the preliminary hearing, which may also have impacted on his trial testimony. See T.T. 5/25/94 at 135. At the times closest to the incident, when his exposure to suggestive influences was more limited, Fuller was unable to identify Petitioner.

[10] The appropriate remedy for an unconstitutionally suggestive pre-trial identification is exclusion of the in-court identification at trial. Manson v. Brathwaite, 432 U.S. 108 (1977); Simmons, 390 U.S. 377.

[11] At the time of Fuller's trial testimony, the Commonwealth's other eyewitness, Christopher Young, had already described an identically suggestive photo array given to him.

counsel was deficient for failing to put the Commonwealth to its proof, thereby depriving him of the opportunity to challenge the allegedly suggestive photo array.

C.     Prejudice

Failure to object to an unreliable eyewitness identification is manifestly prejudicial where, as here, there was no physical evidence linking Petitioner to the crime and the only other eyewitness was also unreliable. See Bruel v. Vaughn, 166 F.3d 163, 173 (3d Cir. 1999) (a court must consider the weight of the evidence against Petitioner at trial in determining the prejudice resulting from an attorney's deficient performance). Had Fuller's identification been excluded by the trial court, the only link between Petitioner and the crime would have been the testimony of Christopher Young, a second eyewitness who identified Petitioner as the shooter. However, Young's trial testimony was unreliable.[12] Despite the fact that he knew Petitioner before the shooting, Young expressly denied knowing the shooter in his first statement to police. T.T. 5/25/94, 69-70. He testified at trial that he identified Petitioner only after police threatened to arrest him for the crime if he did not do so. Id. at 29, 30, 37, 96. Young also testified that he was shown a photo array that was as suggestive as the one shown to Fuller. See supra, n.11. Upon consideration of the weight of the remaining evidence, the Court's confidence in the jury's verdict is undermined.

---

T.T. 5/25/94 at 98-102. Furthermore, in its closing argument, the Commonwealth referred to Fuller as a "certified truth teller" and acknowledged that he had "no reason to lie." T.T. 5/26/94 at 104.

[12]     Even the Commonwealth challenged Young's trial testimony when it threatened him with prosecution for perjury and impeached him with prior inconsistent statements. T.T. 5/25/94 at 30, 159, 168, 170-190.

## IV.  Conclusion

Petitioner's trial counsel failed to object to the in-court eyewitness identification of his client because he erroneously believed that he was not permitted to do so.  This decision indisputably was <u>not</u> part of a "sound trial strategy" and deprived Petitioner of his right to challenge the allegedly suggestive photo array.  The identification in question was the fundamental pillar on which the Commonwealth's case rested and counsel's error fatally undermines the reliability of the verdict.  Accordingly, a writ of habeas corpus shall issue directing that Petitioner be re-tried within one hundred twenty (120) days or be released.