```
        IN THE UNITED STATES DISTRICT COURT
      FOR THE EASTERN DISTRICT OF PENNSYLVANIA

CLAYTON THOMAS                :    CIVIL ACTION
                              :
     v.                       :
                              :
BEN VARNER, et al.            :    NO. 02-4778
```

**ORDER**

AND NOW, this         day of            , 2004, petitioner's motion for bail pending appeal is denied without a hearing.

```
                         BY THE COURT



                         _____
                         BRUCE W. KAUFFMAN
                         United States District Court Judge
```

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CLAYTON THOMAS | : | CIVIL ACTION |
| v. | : | |
| BEN VARNER, et al. | : | NO. 02-4778 |

**RESPONSE TO PETITIONER'S MOTION FOR BAIL PENDING APPEAL**

LYNNE ABRAHAM, District Attorney of Philadelphia County, by HELEN KANE, Assistant District Attorney, and THOMAS W. DOLGENOS, Chief, Federal Litigation, on behalf of respondents, respectfully requests that petitioner's motion for release on bail pursuant to F.R.A.P. 23(a) be denied and, in support thereof, states:

1. On May 27, 2004, this Court granted a conditional writ of habeas corpus and further directed that the order be stayed if a timely appeal was filed in the Third Circuit. On June 25, 2004, the Commonwealth, on behalf of respondents, filed an appeal from the order granting the conditional writ of habeas corpus and the order is thus stayed pending the appeal. Petitioner did not appeal from either the denial of relief on his two remaining claims, nor did he appeal from the grant of the stay.

2. On or about August 27, 2004, petitioner filed a motion pursuant to F.R.A.P. 23(b), for bail pending the appeal.

3. Notwithstanding that F.R.A.P. 23(c) provides for the release of a successful habeas petitioner pending review of the decision ordering release, the Supreme Court has held that the federal courts have discretion, employing the general standards governing stays of civil judgments, to decide whether to release a state prisoner pending the state's appeal. <u>Hilton v. Brauskill</u>,

1

481 U.S. 770 (1987). While noting that under the predecessor to F.R.A.P. 23(c), the discretion of the federal courts to deny the release of a state prisoner who prevailed on habeas was apparently curtailed, the Supreme Court observed that current Rule 23(c) undoubtedly permits a more sensible interpretation. Id., at 775.

  4.  Thus, guided by Fed.R.Civ.P. 62(c) and F.R.A.P. 8(a) which govern the issuances of civil stays by the federal district courts and the circuit courts of appeals, respectively, the Supreme Court determined that the following factors are helpful in resolving requests for bail pending appeal of an order granting habeas relief: (1) the likelihood of success on the merits of the appeal; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies. Id., at 776. In addition to the above categories, the Supreme Court directed that a federal habeas court presented with a bail request pending appeal also consider the specific factors of the possibility of flight and the risk that the petitioner will pose a danger to the community. Id., at 777-78.

  5.  Furthermore, the Supreme Court observed that a successful habeas petitioner is in a considerably less favorable position than a pre-trial arrestee because the habeas petitioner has been adjudged guilty beyond a reasonable doubt by a judge or a jury and his conviction has been upheld by the state appellate courts. Accordingly, due process is not implicated by the delay of the

habeas petitioner's release from custody pending appeal by the state. Id., at 779. This is so even though the federal court has disagreed with all of the previous courts, and determined that the state conviction is unconstitutional, given that the federal court decision itself may be overturned on appeal, thus re-instating the conviction and sentence.

6. Because the factors identified in Hilton militate against release of petitioner pending respondents' appeal of the grant of habeas relief, this Court should deny the motion for bail pursuant to F.R.A.P. 23(c).

**DISCUSSION**

A.   Likelihood of Success on the Merits

The Supreme Court identified the state's prospects for success on appeal as the most significant factor in deciding a bail motion under F.R.A.P. 23(c). By approving and adopting the Magistrate Judge's Report and Recommendation and overruling the Commonwealth Objections, this Court has determined that petitioner's claim that his counsel was ineffective for not having moved after-the-fact to suppress or to object to the in-court identification testimony by eyewitness Peter Fuller was meritorious and that the Commonwealth's position was incorrect. Thus, while the Court might find it difficult to conclude that respondents are likely to prevail on appeal, it is also clear that the mere fact that a habeas petitioner has prevailed is obviously not sufficient to preclude the grant of bail to state prisoner. Thus, in Hilton, the Supreme Court explained that this factor would weigh in favor of the state

if the second and fourth factors (discussed below) also weigh in the state's favor and the state established that it has a strong likelihood of success on appeal or, failing that, the state can demonstrate a "substantial case on the merits." 481 U.S. at 778.

In staying its order granting the conditional writ of habeas corpus pending respondents' appeal, this Court effectively determined that enlargement (that is, release) of petitioner during the appeal period was not warranted. Moreover, this Court granted a certificate of appealability, which at least implicitly suggests that this Court considered that the grant of the writ in this case warranted review by the Court of Appeals. Pursuant to the habeas statute, a certificate of appealability should issue only where the appeal presents a "substantial" issue. 28 U.S.C. § 2253.[1]

In its Objections to the Magistrate's Report and Recommendation, the Commonwealth set forth a number of grounds for reversal of the grant of relief, each of which are discussed in detail in the Commonwealth's 46 page Objections and Memorandum of Law. Most significant, however, was the Magistrate Judge's erroneous conclusion that the Commonwealth was charged with the burden of proving that a motion to suppress the photographic identification of petitioner by eyewitness Peter Fuller would have failed on the merits. The Magistrate's decision to shift the burden of proof to the Commonwealth directly contravenes United States Supreme Court precedent. Indeed, as <u>Kimmelman v. Morrison</u>,

---

[1] In fact, respondents, unlike a state prisoner, do not require a certificate of appealability in order to seek appellate review of the grant of writ of habeas corpus. 28 U.S.C. § 2253.

477 U.S. 365, 375, 106 S.Ct. 2574, 2583 (1986), makes clear, a habeas petitioner who claims a Sixth Amendment violation based on his counsel's failure to seek suppression of evidence bears the burden of showing that the forgone suppression claim was meritorious in order to make out the performance prong of the two-part Strickland test for ineffectiveness of counsel claims. Here, where petitioner's claim of ineffective assistance was premised on his counsel's failure to move to suppress or to object to the in-court identification by Peter Fuller based on what petitioner claimed was a suggestive out of court identification, Kimmelman plainly dictates that petitioner bear the burden of proving that the identification procedure was suggestive. See also Reese v. Fulcomer, 946 F.2d 247 (3d Cir. 1991) (habeas petitioner alleging that trial counsel was ineffective for not challenging allegedly suggestive identification procedures had initial burden of proving that the identification procedure was suggestive and absent such a showing, petitioner could not establish his derivative claim of ineffective assistance).

Thus, regardless of whether petitioner's claim of ineffective assistance was reviewed de novo as the Magistrate Judge concluded -- another error which the Commonwealth has raised in its appeal -- or under AEDPA's deferential standard of review, the constitutional claim at issue was one of ineffective assistance governed by Strickland v. Washington, 466 U.S. 466 (1984). Under Strickland, the petitioner bears the burden of proving that (1) his counsel's performance was objectively unreasonable and (2) as a result of

5

counsel's constitutionally deficient performance, the verdict was unreliable. To succeed in showing that his counsel's performance was constitutionally deficient, <u>petitioner</u> was therefore required to show that the photographic identification by Mr. Fuller was constitutionally tainted. According to Detective Piree's testimony at trial, he did not highlight the photographs of either petitioner or the co-defendant when he showed them to Mr. Fuller as part of two separate groups of twelve photographs of black males (N.T. 5/25/94, 219, 223). In contrast, Mr. Fuller testified that the detective had selected two of the photographs and asked him whether they were the robbers (<u>Id</u>., at 139). However, as the Magistrate Judge acknowledged, he was not in a position to resolve the credibility issue between these two witnesses because he did not hear either of them testify. Thus, because the record does not establish that the photographic identification was suggestive -- a prerequisite to petitioner's prevailing on his claim of ineffective assistance of counsel -- the grant of habeas relief was erroneous. Accordingly, there is a strong likelihood that the Commonwealth will succeed on its appeal.[2]

B.   <u>Irreparable Injury</u>

Certainly where the Supreme Court has given the government the absolute right to appeal an unfavorable habeas decision, F.R.A.P. 22(b), that right should not be vitiated by the release of the

---

[2]In discussing the merits of the Commonwealth's appeal, petitioner ignores the Magistrate's erroneous allocation of the burden of proof below and thus fails to acknowledge the procedural defect upon the decision in his favor rests.

state prisoner prior to the Third Circuit's review of that decision.  Indeed, petitioner's release would cause the Commonwealth irreparable injury, since he is both a risk of flight and a danger to the community, factors the Supreme Court held relevant to the decision whether to release a successful applicant for habeas relief.  As the Supreme Court further observed, the state's interest in retaining custody of petitioner are strongest where the sentence is lengthy.

Here, petitioner is serving as sentence of life imprisonment, for second degree murder.  Given the violent nature of his crime -- the murder and robbery of an elderly gentleman gunned down in his own home and the separate aggravated assault of an eyewitness who petitioner shot without provocation -- petitioner plainly poses a danger to the community.  Nor was this crime, while certainly the most violent one to date, an exception to the persistent pattern of criminal behavior in which petitioner has engaged for his entire adult life.  Petitioner's adult criminal record as compiled by the Pennsylvania State Police,[3] includes over 30 arrests for crimes which date from 1970 to the time of his arrest for the instant murder.  Indeed, he was arrested for this crime while in custody in Bucks County.  His Philadelphia criminal history consists of numerous arrests and convictions for thefts and receiving stolen property, most often cars.  While many of these cases resulted in sentences of probation or minimal prison time, in 1976, petitioner was convicted of two separate burglaries committed in Delaware and

---

[3]The State Police record is attached as Exhibit A.

Montgomery Counties for which he was sentenced to serve, respectively, 3 to 10 and 5 to 10 years imprisonment. These state sentences, however, did not dampen petitioner's criminal tendencies which continued unabated, interrupted by occasional returns to state prison for parole violations, until his arrest in March of 1993 and subsequent conviction and sentence of life imprisonment for the instant case.

In determining whether petitioner's release would present a danger to the community, this Court should consider that according to his son Shaurn Thomas, petitioner conceived of the plan to rob Mr. Harry's speakeasy and over Shaurn's his initial reluctance, petitioner persuaded him to assist in the crime and further attempted, although unsuccessfully, to recruit Christopher Young to join in as well.

While petitioner suggests that his criminal tendencies are probably diminished because, supposedly "every criminal justice study" has shown that recidivists tend to commit less crime as they age, it would appear that petitioner is the exception to this "rule." Indeed, at the time that he planned and committed the instant crime, petitioner was already 42 years of age, hardly an impetuous youth. In any case, as the Supreme Court recognized in Hilton, decisions about bail must be based on individual circumstances. In light of petitioner's own extensive criminal record, this Court should reject the notion that petitioner no longer poses a danger to the community based on "studies" which have no bearing on his individual behavior and character.

Furthermore, while petitioner also claims that, if released, he intends to live with his wife, Hazel, at 1815 N. 28th Street, in Philadelphia, it is well worth noting that he was living at this same address with his wife when he committed the instant crimes.[4] Furthermore, the surviving victim of this crime also lives in the neighborhood where Mr. Thomas proposes to reside. To allow Mr. Thomas to return to the same area where it is likely that he will encounter witnesses to his violent crime poses a risk to their safety.[5]

In addition, while petitioner describes his family as "intact, successful and supportive," this characterization is, at best, disingenuous. Petitioner has omitted any reference to the fact that two of his sons, Shaurn and Mustafa Thomas, are currently serving sentences of life imprisonment, having been convicted by a jury in 1994 for the brutal car-jacking and murder of Domingo Martinez, the owner of a check-cashing agency in Philadelphia which occurred on November 13, 1990. At the joint trial of the Thomas brothers, it was established that they, and at least three other men from the neighborhood, had gathered at the Thomas house the

---

[4] Prior to trial, petitioner submitted the name of Hazel Thomas as a potential alibi witness. In the statement that Mrs. Thomas later provided to defense counsel on direct appeal, she asserts that at the time of this crime, they were living together. See Hazel Thomas' statement, attached as Exhibit B.

[5] In addition, given that it is entirely possible that others in the neighborhood have information about this crime which they were reluctant to divulge at the time of petitioner's trial, the proximity of petitioner would no doubt chill any willingness on the part of such witnesses to come forward if the Commonwealth does not prevail in its appeal and a new trial ensues.

9

night before and planned the crime.[6]

With respect to the issue of whether petitioner poses a risk of flight, throughout his lengthy criminal career, petitioner has used over 30 aliases which are listed on his record compiled by the Pennsylvania State Police (Exhibit A, at 2). In addition, petitioner has given 6 different dates of birth. Thus, it is not surprising that the State Police record also includes the notation that fingerprints are required to positively identify petitioner. Furthermore, according to an intake report prepared by Pretrial Services on January 2, 1993, following petitioner's arrest involving yet another stolen car, as of that date, petitioner had failed to appear for court 31 times. A copy of the pre-trial report is attached as Exhibit C.[7] Petitioner's penchant for disguising his true identity and failing to show up for court demonstrates that the risk of flight is substantial.

In addition, following the issuance of the warrant for petitioner's arrest for the robbery and murder of Mr. James, police looked for him for over a month at various locations he was known

---

[6]This Court will no doubt recall that Shaurn Thomas was acquitted of the instant crime at the joint trial with petitioner in May of 1994. At that time, however, Shaurn was also facing trial for the car-jacking murder, having been arrested for that crime on July 23, 1993. Following Shaurn Thomas' direct and post conviction appeals in state court of that conviction, he applied for habeas relief which the Honorable Stewart Dalzell denied on October 1, 2002. Shaurn Thomas v. Frank Gillis et al., C.A. No. 01-5409.

[7]When arrested on this case, petitioner gave his name as James Thomas. He was released on bail but failed to appear for the preliminary hearing on January 8, 1993, resulting in the issuance of a bench warrant. Petitioner pled guilty to this charge on May 19, 1993.

to frequent in Philadelphia (including his "intact home" in the neighborhood where he committed this crime) and in New Jersey. On March 3, 1993, petitioner was arrested in Bensalem, Bucks County and Philadelphia detectives then arrested petitioner on March 4, 1993.

C. Injury To Petitioner

Petitioner suggests that it may be an additional six to eighteen months from now before respondents' appeal is resolved and that requiring him to remain in custody during this time will cause him irreparable harm. Of course, if the Commonwealth prevails on appeal, he will have suffered no injury. Moreover, even if unsuccessful before the Court of Appeals, the Commonwealth will retry petitioner and, in light of his extensive criminal record, the seriousness of his crime and his persistent record for failing to appear for court in Philadelphia, will request that he be held without bail. Thus, petitioner's view that he would be released from prison but for the Commonwealth's appeal of the order granting habeas corpus is simply wrong.

D. The Public Interest

It is difficult to see how the public interest would be well served by releasing petitioner before the Commonwealth's appeal is resolved. Indeed, petitioner fails to address this category at all. The public has great interest in the enforcement of its criminal laws and its own protection from dangerous offenders. Unless and until it is finally determined that petitioner's trial and conviction was Constitutionally infirm, the balance should

surely weigh on the side of caution and maintaining the status quo. See Hakeem v. Beyer, 774 F.Supp. 276, 297 (D.N.J. 1991), vacated and remanded on other grounds, 990 F.2d 750 (3d Cir. 1993) (a stay is more likely to be granted where it will preserve the status quo: "[A] prisoner's potential dangerousness is without a doubt a matter of paramount importance to the public and can hardly be excluded from an assessment of the public's interest in granting a stay"). Given petitioner's serious, violent crime, his extensive criminal record and incentive for flight, the public interest must weigh in favor of the grant of denying his request for bail pending appeal.

**WHEREFORE**, respondents respectfully request that the Court deny petitioner's motion for bail pending appeal without a hearing.

Respectfully submitted,

*[signature]*

HELEN KANE
Assistant District Attorney

*[signature]*

THOMAS W. DOLGENOS
Chief, Federal Litigation

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

CLAYTON THOMAS                    :    CIVIL ACTION
                                  :
     v.                           :
                                  :
BEN VARNER, et al.                :    NO. 02-4778

### CERTIFICATE OF SERVICE

    I, HELEN KANE, hereby certify that on September 8, 2004, a copy of the foregoing pleading was served by placing same, first class postage prepaid, in the United States Mail addressed to:

Daniel Silverman, Esquire
1429 Walnut Street
Suite 1001
Philadelphia PA 19102

_____
HELEN KANE
PA ID No. 26096
Assistant District Attorney
District Attorney's Office
1421 Arch Street
Philadelphia PA 19102
215-686-5742